IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMY MCCARTER,<br><br>    Plaintiff,<br><br>vs.<br><br>FD HOLDINGS, LLC, d/b/a Factual Data,<br><br>    Defendant. | 4:20-CV-3080<br><br>MEMORANDUM AND ORDER |

  Amy McCarter sued FD Holdings, LLC d/b/a Factual Data for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. McCarter alleges that when she applied for a mortgage, Factual Data provided erroneous credit report information to her lender by including a creditor judgment that had been discharged in bankruptcy. *See* filing 1-1 at 3.

  This matter is before the Court on Factual Data's motion for judgment on the pleadings (filing 13), and McCarter's motion for leave to file an amended complaint (filing 18). Factual Data argues that plaintiff's complaint fails to state a claim under the FCRA and must be dismissed. Filing 13 at 1. And it argues that amendment of the complaint would be futile. Filing 20 at 1-3. For the reasons set forth below, Factual Data's motion will be granted, McCarter's motion will be denied, and McCarter's complaint will be dismissed.

I. BACKGROUND

  Factual Data provides credit reporting services in Nebraska and other states. Filing 1-1 at 2; filing 6 at 2. McCarter is a Nebraska resident who was the subject of three consumer reports provided by Factual Data to Dundee Bank in early 2020. *See* filing 6 at 4; filing 6-3; filing 6-4; filing 6-7. Two of

those reports, dated January 20, 2020 and February 6, 2020, included a civil judgment from 2013 for $5,605 in favor of Credit Management Services, Inc. against McCarter as due and owing. *See* filing 1-1 at 3; filing 6-3 at 12; filing 6-4 at 9; *see also* filing 6-7. The reports also included a 2014 Chapter 7 bankruptcy that resulted in discharge. *See* filing 6-3 at 12; filing 6-4 at 9. But McCarter alleges the reports were erroneous because the 2013 civil judgment was actually discharged in the 2014 Chapter 7 bankruptcy. Filing 1-1 at 3; *see also* filing 6-1, filing 6-2, filing 6-8.

McCarter filed suit against Factual Data, alleging violations of the FCRA. Filing 1-1 at 4-5. Specifically, McCarter alleges that Factual Data has no reasonable procedure for monitoring or updating their records when judgments are discharged in bankruptcy proceedings, in violation of 15 U.S.C. § 1681e(b). Filing 1-1 at 3. And McCarter alleges that because her creditors and potential creditors saw the incorrect information she incurred "serious injuries, actual damages, and harm." Filing 1-1 at 4-5.

Factual Data answered and attached the public records associated with McCarter's civil judgment, filing 6-8, bankruptcy, filing 6-1, and discharge, filing 6-2. It also attached the three consumer reports Factual Data had furnished to Dundee Bank. Filing 6-3, filing 6-4, filing 6-7. And Factual Data attached a request for consumer disclosure, filing 6-5, that McCarter sent to Factual Data as well as Factual Data's response to that request, filing 6-6.

Factual Data explains that the consumer reports had been requested by Dundee Bank when McCarter applied for a mortgage. Filing 6 at 7. After Factual Data furnished the erroneous consumer reports to Dundee Bank, McCarter requested a free copy of her credit report from Factual Data, but didn't dispute any information contained in the reports. Filing 6-5. And shortly thereafter, Dundee Bank approved McCarter's mortgage—evidenced by a Deed

of Trust dated March 4, 2020. Filing 6-9. Factual Data explains that the inaccurate civil judgment information it provided to Dundee Bank came from LexisNexis Risk Solutions, not Factual Data itself. Filing 6 at 3; *see also* filing 6-3 at 12; filing 6-4 at 9.

But Factual Data also claims that the reports it provided Dundee Bank were in fact accurate. *See* filing 14 at 2; filing 17 at 6-7. When McCarter filed for bankruptcy in 2014, her petition incorrectly listed the value of Credit Management Services' judgment against her as $0 rather than $5605. Filing 6-1 at 19. The court order granting McCarter's discharge explained that "[m]ost, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed." Filing 6-2 at 2. But the order also cautioned that "some debts which were not properly listed by the debtor" are commonly not discharged and suggested "[b]ecause the law is complicated, you may want to consult an attorney to determine the exact effect of discharge in this case." Filing 6-2 at 2. McCarter does not dispute the state of the public records.

After filing its answer, Factual Data moved for judgment on the pleadings arguing that McCarter failed to state a claim upon which relief may be granted. Filing 13. According to Factual Data, the FCRA does not require it to double-check LexisNexis' information before reporting it to a lender. Filing 14 at 1. And Factual Data argues that McCarter has not been harmed because she received the mortgage she applied for. Filing 14 at 1. Finally, Factual Data suggests that the alleged inaccuracy—whether McCarter's incorrectly listed debt was in fact discharged in her 2014 bankruptcy—is a legal issue, not a factual issue, and should therefore not give rise to liability.

## II. STANDARD OF REVIEW

### 1. MOTION FOR JUDGMENT ON THE PLEADINGS

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Rule 12(c) motions are reviewed under the same standard as a 12(b)(6) motion to dismiss for failure to state a claim.[1] *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990); *St. Paul Ramsey*, 857 F.2d at 1187.

So, the Court must view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). But the plaintiff must offer more than unadorned accusation, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and must provide more than labels and conclusions—a formulaic recitation of the elements of a cause of action will not suffice, *Twombly*, 550 U.S at 555.

When ruling on a motion to dismiss under Rule 12(b)(6) or 12(c), a district court generally may not consider materials outside the pleadings. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008). It may, however, consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings. *Id*.

A grant of judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Poehl*, 528 F.3d at 1096.

---

[1] The only real difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is timing. The Rule 12(b)(6) motion comes before or in lieu of a defendant's answer, and a Rule 12(c) motion comes after a defendant's answer. *St. Paul Ramsey County Medical Ctr. V. Pennington Cty., S.D.*, 857 F.2d 1185, 1187 (8th Cir. 1988).

2. MOTION FOR LEAVE TO AMEND COMPLAINT

The Court should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). But the Court may deny a motion for leave to amend if amendment would be futile. *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). Denial on the basis of futility is proper when the Court concludes that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6). *Id.*

## III. DISCUSSION

The FCRA does not provide for comprehensive regulation of the consumer reporting industry. *Hauser v. Equifax*, 602 F.2d 811, 814 (8th Cir. 1979). Rather, it establishes the broad minimum standard of "reasonable procedures" and requires consumer reporting agencies to adopt procedures which meet that minimum standard. *Id.*; *see* 15 U.S.C. § 1681e(b). And consumer reporting agencies are not strictly liable for inaccuracies under the FCRA. *Hauser*, 602 F.2d at 814. A plaintiff must show negligent or willful failure to follow reasonable procedures to assure maximum possible accuracy. *Id.* at 814-15; *see* 15 U.S.C. § 1681e(b).

The parties agree that to state a claim for violation of § 1681e(b) a plaintiff must allege (1) the consumer reporting agency failed to follow reasonable procedures to assure the accuracy of its reports, (2) the report in question was, in fact, inaccurate, (3) the plaintiff suffered injury, and (4) the consumer reporting agency's failure caused the plaintiff's injury.[2] *Wright*, 805

---

[2] The Eighth Circuit has not yet identified the precise elements of a 15 U.S.C. § 1681e(b) claim. Other Circuits have taken varied approaches. *Compare Wright v. Experian Info. Solutions, Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015) *with Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001). Because the parties agree on the Tenth Circuit's

F.3d at 1239; *Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002); *see also* filing 16 at 5; filing 17 at 4.

Factual Data argues that McCarter's complaint must be dismissed because it does not sufficiently allege (1) a loss of credit or some other injury as required by the FCRA, or (2) that Factual Data failed to follow reasonable procedures. *See* filing 14 at 4. In response, McCarter asserts that the inaccuracy of the report must be decided in her favor. Filing 16 at 5-6. In reply, Factual Data argues that McCarter did not sufficiently plead "factual inaccuracy" as opposed to "legal inaccuracy," and therefore her complaint must be dismissed. *See* filing 17 at 6-7.

The threshold inquiry under § 1681e(b) is whether the consumer report was inaccurate. *See Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020). If the report was not inaccurate, the reasonableness of a reporting agency's procedures turn out not to matter. *Id.* So the Court will address whether McCarter has sufficiently pled facts to establish Factual Data's consumer reports were inaccurate.

The Eighth Circuit has little caselaw addressing § 1681e(b) claims. *See Auer v. Trans Union, LLC*, 902 F.3d 873 (8th Cir. 2018); *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824 (8th Cir. 2013); *Hauser*, 602 F.2d 811; *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829 (8th Cir. 1976). And it has not defined the "maximum possible accuracy" that § 1681e(b) requires consumer reporting agencies to follow "reasonable procedures to assure." *See Taylor,* 710 F.3d at 827 n.2. But a number of other Circuits have concluded that to reach maximum possible accuracy, information must be factually true and also unlikely to lead

---

enumeration of the elements, and because the Court does not find other courts' approaches to be *substantively* different, the Court finds no reason to guess which approach the Eighth Circuit might choose.

to a misunderstanding. *See id.* at 1252; *Dalton,* 257 F.3d at 415; *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890, 895 (5th Cir. 1998); *Twumask-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 943 (6th Cir. 2020); *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1163 (9th Cir. 2009); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984).

Under this widely accepted standard, a report that contains factually incorrect information is plainly inaccurate, as is a report that contains factually correct information but nonetheless misleads its users as to its meaning or implication. *Erickson,* 981 F.3d at 1252. And whether a report is misleading is an objective inquiry based on a reasonable interpretation of a credit report. *Id.* But a consumer reporting agency is generally not required to determine legal issues that they are "neither qualified nor obligated to resolve under the FCRA." *DeAndrade v. Trans Union LLC,* 523 F.3d 61, 68 (1st Cir. 2008); *see also Wright,* 805 F.3d at 1240-41; *Childress v. Experian Info. Solutions Inc.*, 790 F.3d 745, 747-48 (7th Cir. 2015).

In this case, Factual Data argues that McCarter's bankruptcy petition and discharge order do not definitively establish that the creditor judgment in favor of Credit Management Services was discharged. *See* filing 17 at 6. So it argues that the information LexisNexis reported and that it replicated was not inaccurate within the meaning of the FCRA. The Court agrees.

The public records in this case, including (1) the entry of judgment in favor of Credit Management Services (filing 6-8) (2) McCarter's petition for bankruptcy (filing 6-1), and (3) the bankruptcy court discharge order (filing 6-2) are unclear as to whether McCarter's 2013 creditor judgment was discharged. Even the bankruptcy court acknowledged that "[b]ecause the law is complicated, you may want to consult an attorney to determine the exact effect of discharge in this case." Filing 6-2 at 2. And the FCRA does not require

consumer reporting agencies, in order to achieve "maximum possible accuracy," to determine legal issues like whether McCarter's creditor judgment was in fact discharged. *See Childress*, 790 F.3d at 747.

But even assuming McCarter's complaint sufficiently pled that Factual Data's report was inaccurate, the Court concludes that Factual Data acted reasonably as a matter of law. The reasonableness of a reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question. *Sarver v. Experian Info. Sols.*, 390 F.3d 969 (7th Cir. 2004). But "as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994).

All of the public records in this case could have led a reasonable consumer reporting agency to believe that McCarter's 2013 creditor judgment had not been discharged. And it is unreasonable as a matter of law to require Factual Data (or LexisNexis) to "go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action." *Henson*, 29 F.3d at 285. Such background research "would substantially increase the cost of [its] services," and McCarter is in a better position than Factual Data to "detect errors appearing in court documents dealing with [her] own prior litigation history." *See Henson*, 29 F.3d at 285-86. Absent notice from McCarter of an error in the public records, Factual Data was entitled to rely on the accuracy of public court documents in preparing a credit report without being subject to liability under the FCRA. *Id.* at 286.

McCarter requested a free copy of her credit report from Factual Data after it sent consumer reports to Dundee Bank, but did not file a dispute. Filing

6-5. So Factual Data's procedures to assure maximum possible accuracy were reasonable as a matter of law. McCarter's proposed amended complaint does not cure this deficiency.[3] *See* filing 18-1; *Zutz,* 601 F.3d at 850. Having determined that Factual Data's reports were not inaccurate and that its procedures were reasonable as a matter of law, the Court need not address whether McCarter sufficiently alleged damages. Accordingly,

IT IS ORDERED:

1. Factual Data's motion for judgment on the pleadings (filing 13) is granted.

2. McCarter's motion for leave to amend her complaint (filing 18) is denied.

3. McCarter's complaint (filing 1-1) is dismissed.

4. A separate judgment will be entered.

Dated this 24th day of March, 2021.

BY THE COURT:

*[signature: John M. Gerrard]*

John M. Gerrard
Chief United States District Judge

---

[3] The Court notes that McCarter moved for leave to amend her complaint nearly a month after briefing was completed on Factual Data's motion for judgment on the pleadings, so McCarter had every opportunity to try and plead over any deficiencies in the complaint that Factual Data identified.